UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In Re
**LA STANZA DIVA RISTORANTE, INC.,**
Debtor

Chapter 11-Involuntary Petition
Case No. 08-18911-JNF

**MEMORANDUM**

Upon consideration of 1) the Involuntary Petition filed on November 21, 2008 by Daniel P. Scalley ("Scalley"), Scalley Real Estate, Inc., Boston Factors, Inc. (jointly with Scalley Real Estate, Inc., the "Scalley Entities"), and Kristin A. Viveiros[1] against La Stanza Diva Ristorante, Inc. (the "Alleged Debtor"); 2) the Answer of the Alleged Debtor to the Involuntary Petition; 3) the "Motion to Allow Chute Fuel Company as a Joining Creditor," and the "Motion to Allow Constructionaire Design & Build as a Joining Creditor"[2] which the Court allowed on January 14, 2009; 4) the evidence, consisting of exhibits and

---

[1] Ms. Viveiros, a former waitress employed by the Alleged Debtor, appeared at the initial hearing in this case on January 14, 2009. Subsequently, counsel to the Alleged Debtor represented that Ms. Viveiros is no longer owed wages which were the subject of her claim. Neither Scalley nor the Scalley Entities or Ms. Viveiros disputed that representation, nor did they present any evidence at the evidentiary hearings that Ms. Viveiros currently is owed a debt by the Alleged Debtor.

[2] Timothy Scalley, a relative of Daniel Scalley, signed this pleading as "proprietor" of Constructionaire Design & Build.

1

testimony, adduced at evidentiary hearings held on January 16, 21, and 29, 2009;[3] on the issues of whether Scalley and the Scalley Entities hold claims against the Alleged Debtor which are "not contingent as to liability or the subject of bona fide dispute as to liability or amount" and which together with the claims of Constructionaire Design & Build and Chute Fuel Company[4] would total "at least $13,475 more than the value of any lien on property of the debtor securing such claims . . . ." *see* 11 U.S.C. § 303(b)(1); 5) the memoranda of law filed by Scalley, the Scalley Entities and the Alleged Debtor; 6) the interpretation of the term "bona fide dispute" under 11 U.S.C. § 303(b)(1), in particular the decisions of and cases referred to in Metz v. Dilley (In re Dilley), 339 B.R. 1 (B.A.P. 1st Cir. 2006)(explaining that the burden of proof of petitioning creditors in filing an involuntary petition, as part of their prima facie case, is to show that their claims are not the subject of bona fide dispute, and determining that, if the burden shifts to the debtor to establish the existence of a bona fide dispute, courts should utilize an objective standard to decide if claims are the subject of bona fide dispute); In re Regional Anesthesia Associates P.C., 360 B.R. 466, 477 (Bankr. W.D. Pa. 2007)("'The outcome of a dispute need not be resolved, only its presence or absence. Consequently, the court need only engage in a limited analysis of the claims at issue.'").

Now, therefore, the Court finds and rules as follows:

---

[3] In reaching this decision, the Court has considered the credibility and demeanor of the witnesses who testified as well as all documentary evidence.

[4] These claims are not in bona fide dispute.

2

Scalley and the Scalley Entities[5] claim that they are owed $257,924.42 by the Alleged Debtor, an operating restaurant. The Alleged Debtor maintains the claims are in bona fide dispute as to both liability and amount, requiring disqualification of those claimants from the involuntary petition. The Alleged Debtor supports its assertion of a bona fide dispute by maintaining that it is a personal two-party disagreement arising out the termination of the romantic relationship between Scalley and its principal, Lynne Howell ("Howell"), in the fall of 2008. During their relationship, which spanned several years, Scalley controlled the financial operations of the Alleged Debtor, while Howell served as the chef and manager of the restaurant. Scalley, as business manager of the restaurant, opened and maintained all of the Alleged Debtor's bank accounts, set up and managed the "Quick Books" accounting program, opened and had access to a post office box to which all mail was sent, prepared all checks, used Howell's stamp for signing checks, collected all receipts and made all bank deposits, and paid all bills. He handled every aspect of the finances of the Alleged Debtor until Howell terminated their relationship in 2008.

In addition to providing management services to the Alleged Debtor through Boston Factors, Inc., Scalley and Scalley Real Estate, Inc. engaged in real estate brokerage and financing ventures, including ventures with Howell personally. Scalley located a house for Howell to purchase near his residence, handled all aspects of the sale, and arranged for financing through a private lender to enable Howell to acquire the property.

In a similar fashion, in 2000, Scalley enmeshed himself in the financial affairs of

---

[5] Scalley is the principal of both Scalley Entities.

another woman, Kristin Till ("Till"), a recently divorced woman with whom he desired a romantic relationship. He took over her banking, mail collection and bill paying, and he arranged a refinancing of her home with the same private lender he referred to Howell. Till became extremely dissatisfied with her involvement with Scalley and testified that as a result of his advice her personal financial situation deteriorated.

Based upon the testimony of Till and Howell, the Court observes that Scalley has exhibited a pattern of conduct whereby he achieves control over the personal and/or business finances of women with whom he has or seeks a personal relationship for purposes of his own financial gain. In the case of Till's personal finances and Howell's business finances, it appears that Scalley achieved undue influence over both through complex and questionable real estate financings, needlessly elaborate record keeping of their finances, and control over their bank accounts.

In the involuntary petition, Boston Factors, Inc. claims that it is owed $157,696.43. On August 1, 2004, Scalley presented Howell with a two page promissory note entitled "Revolving Line of Credit Promissory Note"(the "Note") payable to Boston Factors, Inc., bearing the signature of Howell, both as an individual and on behalf of the Alleged Debtor. The purported original of the Note was introduced into evidence as Petitioning Creditors' Exhibit 3. The first page of the Note reflects an amount of $150,000. Howell testified that the amount of the Note was actually $15,000 and that the Alleged Debtor did not borrow $150,000 from Boston Factors, Inc. The Note references a UCC-1 filing which was not recorded until after the filing of the involuntary petition. The first page of the Note is

4

printed on Boston Factors, Inc. stationary on what appears to be bond paper and the second page of the Note appears to be printed on plain white paper. The two pages were stapled together, but there is evidence that the staple had been removed and the pages re-stapled. Additionally, the second page appears to have been folded in thirds, while the first page bears no creases or fold marks. In view of Howell's credible testimony that the Note was in a different amount than that alleged by Scalley, the Court finds that it is more likely than not that the document submitted into evidence was not the Note signed by Howell.

Pursuant to the Note, Boston Factors, Inc. claims that it is owed $157,696.43 for advances to the Alleged Debtor between August of 2004 and August of 2008 in a series of several hundred transactions. *See* Petitioning Creditors' Exhibit 6. It introduced bank records in support of this claim which would appear to reflect over $300,000 in piecemeal advances made by Boston Factors, Inc. to the Alleged Debtor. It did not provide any reconciliation of the amounts allegedly owed.

A review of the voluminous exhibits submitted by Scalley reveals that advances totaling in excess of $100,000 were in the form of cash or a "credit memo," and that over $250,000 in advances purportedly made by check are unsupported by any corroborating bank deposit receipt or bank statement of the Alleged Debtor. Due to the lack of corroboration or substantiation for the amount claimed by Boston Factors, Inc., the Court questions the authenticity of the records submitted by Scalley, and concludes that the claim of Boston Factors, Inc. is in bona fide dispute as to liability and amount.

5

Scalley Real Estate, Inc. claims that the Alleged Debtor owes it the sum of $78,727.99 for loans. At the evidentiary hearing, neither Scalley nor the Scalley Entities submitted loan documents, promissory notes, or other contracts evidencing the basis for the claim. Scalley testified that for approximately two years Scalley Real Estate, Inc. made advances in excess of $300,000 to the Alleged Debtor in the form of checks. While many checks to the Alleged Debtor drawn on Scalley Real Estate, Inc.'s bank account were introduced into evidence, advances in excess of $200,000 are not evidenced by the Alleged Debtor's bank records. Moreover, the exhibits reflect that Scalley Real Estate, Inc. received in excess of $100,000 from the Alleged Debtor. Most importantly, there is no evidence of any agreement, written or otherwise, for the repayment of any loan between Scalley Real Estate, Inc. and the Alleged Debtor. Thus, the Court finds that the claim of Scalley Real Estate, Inc. is in bona fide dispute.

Scalley claims that he is personally owed $12,500 by the Alleged Debtor on account of "Credit Advance:AMEX." Both he and Howell had American Express credit cards issued in the name of the Alleged Debtor. When Scalley charged an expense on the credit card, he decided the amount of his reimbursement by the Alleged Debtor, and he used the credit card for personal expenses. There was no evidence concerning what his agreement was with the Alleged Debtor with respect to use of the credit card. He asserted that Howell made credit charges or obtained cash advances from the AMEX card and used the card to advance monies to the corporation. He also testified that he paid the balance due to AMEX and did not receive reimbursement from the Alleged Debtor to the extent of

6

$12,500.

Scalley also had a Note Payable account with the Alleged Debtor for which he maintained records of credits and debits. His accounting records reflect that the balance due to him personally was $1,168.97, not $12,500. In view of the absence of evidence of an agreement between him and the Alleged Debtor as to the terms of use and reimbursement of credit card charges, the Court finds that the claim of Daniel Scalley is in bona fide dispute as to liability and amount.

The Court also finds that the totality of evidence warrants the conclusion that the involuntary petition is not supported by the requisite number of creditors whose claims are not in bona fide dispute. Accordingly, the Court shall enter an order dismissing the involuntary petition.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 10, 2009
cc: Victor Bass, Esq. Richard M. Canzano, Esq., U.S. Trustee, Daniel Scalley, Timothy Scalley, Chute Fuel Co.